# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

DEBRA STOE,                                      )
703 Hunter Way                                   )
Baltimore, MD  21228,                            )
                                                 )
        Plaintiff,                                  )
                                                 )      Civil Action No. 16-1618
        v.                                          )
                                                 )
LORETTA LYNCH, ATTORNEY                          )
GENERAL, U.S. DEPARTMENT OF                      )
JUSTICE,                                         )
950 Pennsylvania Ave., N.W.                      )
Washington, D.C.  20530,                         )
                                                 )
        Defendant.                                  )
                                                 )

## COMPLAINT FOR RELIEF FROM
## GENDER AND AGE DISCRIMINATION IN EMPLOYMENT

### Jurisdiction

1.      This is an action brought under Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*,

seeking promotion, back pay and other relief for discrimination in employment based on gender

and age.  This Court has jurisdiction under 42 U.S.C. § 2000e-16(c) and under 29 U.S.C. §

633a(c).  Venue lies in this Court because the discriminatory employment practices challenged in

this action took place in the District of Columbia.

1

**Parties**

2.      Debra Stoe is a 62-year old woman who has continuously worked for the Department of Justice since 1998.

3.      Loretta Lynch is the Attorney General of the United States, and is the head of the Department of Justice where Plaintiff is employed.  She is sued in her official capacity only.  The Department of Justice has more than 500 employees.

**Facts**

4.      This lawsuit challenges Defendant's refusal to select Plaintiff Stoe for the newly created GS-15 position of Supervisory Program Manager, within the Department of Justice (DOJ), Office of Justice Programs (OJP), National Institute of Justice (NIJ), Office of Science and Technology (OST), in July 2014.

5.      In April 2014, DOJ posted an opening for the newly created GS-15 Supervisory Program Manager position within OST.  As spelled out in the position description, the Supervisory Program Manager was to lead the Policy, Standards, and Grants Management Division within OST.  Notably, a central responsibility of the new position was to oversee NIJ's development of equipment performance testing standards and equipment testing.  As such, the Supervisory Program Manager was to serve as one of the two alternate Standards Executives at the DOJ serving on the Interagency Committee on Standards Policy, which is the standards coordinating body of the federal government and a cabinet-level working group.

6.      At the time of her non-selection, Plaintiff was extraordinarily well qualified for the position.  She had been serving as a GS-14 within OST for almost ten years.  Her performance ratings were consistently at the exemplary level.  Since at least 2011, Plaintiff had

actually been performing GS-15 level responsibilities (as admitted by her two supervisors in a

memo seeking to have her position reclassified to the GS-15 level), including most of those

contained within the Supervisory Program Manager job description.  To name one crucial

example, Plaintiff had been serving as one of the two DOJ alternate Standard Executives serving

on the Interagency Committee on Standards Policy.  Plaintiff had been performing her GS-15

responsibilities at an exemplary level, as reflected in her annual performance reviews.

7.      Indeed, Plaintiff had substantial experience performing almost all the

responsibilities of the Supervisory Program Manager position.  For the decade immediately

preceding her nonselection, since 2004, Plaintiff had served as OST's Standards Policy Advisor

and its Standards and Testing Program Manager and had been the lead and expert consultant for

the agency's Standards and Testing Program.  In fact, over the course of the immediately

preceding decade, Plaintiff had actually conceived, developed, implemented and continuously

refined the NIJ's then-current standards and testing program.  The program was her creation, and

it was repeatedly recognized as an extreme advancement in furtherance of OST's mission.

8.      As Plaintiff's 2014 performance review explained:

> During the reporting period, Ms. Stoe's performance exceeded expectations to an
> exceptional degree in all elements.  She consistently demonstrated unusually high
> initiative in performing job responsibilities and consistently performed in a manner
> which is significantly beyond what is expected.  Her performance is made
> particularly exceptional by the fact that her immediate supervisor's position was
> vacant during much of the reporting period.  I cannot do full credit to the span of
> Ms. Stoe's work in the space available, but I will touch on some of what I consider
> to be her most important contributions.  Among them, Ms. Stoe plays a vital role in
> NIJ's efforts to ensure that the unique equipment used by criminal justice agencies
> is safe and effective.  Ms. Stoe is the architect of both NIJ's current standards
> development strategy and the new strategy we are adopting to enable NIJ to
> develop needed standards more efficiently through engagement with other, non-
> governmental standards development organization (SDOs).  Ms. Stoe is singularly
> responsible for moving NIJ's Standards and Testing Program into the modern era,
> and aligning it with international best practice.  This demonstrates her exceptional
> job knowledge.... During much of the reporting period, Ms. Stoe served as one of

3

two alternate Standards Executives for DOJ.  As such, she represented DOJ on the Interagency Council for Standards Policy, which coordinates the Federal Government's standards policy.  This is a senior executive position, in which she served with credit. Serving in this position required that Ms. Stoe demonstrate not only exceptional Job Knowledge, but also exceptional Communication skills.

9.      In 2010, Plaintiff was awarded the AAG Employee of the Year for her work on standards development.

10.      Although Plaintiff was deemed qualified for the position, and was granted an interview, Tillery did not select Plaintiff for the position.  Instead, Tillery selected Mark Greene, a man who was 38 years old at the time of the selection and who was demonstrably and substantially less qualified for the position than Plaintiff.

11.      Indeed, Greene did not make the initial cut for receiving an interview.  He was only invited to interview for the position due to an internal OJP policy that requires that if one OJP applicant is selected for an interview, in this case Plaintiff, any other OJP applicants on the certificate list must be interviewed.

12.      At the time of his selection, Greene had only been working at OST at the GS-14 level for a year and a half.  He had no experience on standards testing prior to joining NIJ, and he had only been at NIJ since April 2010.  His experience with standards was limited to 3 efforts performed under Plaintiff's guidance, each of which involved applying processes and protocols which Plaintiff herself had designed and implemented.  He had never published a standard on which he worked, nor had he ever designed or implemented any type of certification or conformity assessment program.  His relevant experience at the GS-14 level was minimal, and with respect to the core areas of responsibility of the position, Mr. Greene was a novice.

13.      Plaintiff was notified of her nonselection by Tillery on July 23, 2014.  Tillery's first explanation was that Plaintiff had scored highest in every area except grants management.

However, this explanation was demonstrably false and nonsensical, because Plaintiff had ten-plus years of grants management work performed at an exemplary level – substantially more and better experience than Mr. Greene.  Once Plaintiff challenged this explanation as implausible, the Agency's stated reason for the nonselection became that Plaintiff did not perform well at her interview.  This explanation is also false.  Plaintiff performed very well at her interview, and indeed one of the interview panelists had told others that she had done very well at her interview.

14.     Defendant's selection of Mark Greene for the position denied Plaintiff promotion to the GS-15 level.  Gender discrimination and/or age discrimination was a determining factor in the decision not to select Plaintiff.

15.     Plaintiff timely exhausted her administrative remedies and lodged an internal charge of age and gender discrimination with the Agency within 45 days of learning of her non-selection.

16.     Defendant's actions have damaged Plaintiff's career, denied her advancement opportunities and reduced her pay and benefits.  Defendant's actions have also caused Plaintiff substantial emotional harm and loss of enjoyment of life.

**COUNT ONE**
**GENDER DISCRIMINATION**

17.     Paragraphs 1-16 are realleged.

18.     Defendant's refusal to select Plaintiff for the GS-15 position of Supervisory Program Manager because of her gender violated Title VII.

## COUNT TWO
## AGE DISCRIMINATION

19.     Paragraphs 1-16 are realleged.

20.     Defendant's refusal to select Plaintiff for the GS-15 position of Supervisory

Program Manager because of her age violated the Age Discrimination in Employment Act.


WHEREFORE, Plaintiff requests that this Court:

1)      award her promotion/instatement to the GS-15 position of Supervisory Program

Manager, retroactive to July 2014, or to an equivalent GS-15 position, with full back pay and all

related benefits;

2)      award her compensatory damages;

3)      award her front pay at the GS-15 level until she retires from the federal

government;

4)      enjoin Defendant from engaging in gender discrimination and from retaliating

against Plaintiff for pursing this action;

5)      award Plaintiff costs and reasonable attorneys' fees incurred in this action and the

administrative claims that necessarily preceded it;

6)      award such other relief as the Court deems just.


## JURY DEMAND

Plaintiff requests trial by jury as to all issues in this case.

Respectfully submitted,

Susan E. Huhta, #453478
Richard A. Salzman, #422497
HELLER, HURON, CHERTKOF & SALZMAN
1730 M Street, N.W., Suite 412
Washington, D.C.  20036
(202) 293-8090 (ph)
(202) 293-7110 (fax)
SEH@HellerHuron.com
RAS@HellerHuron.com

Attorneys for Plaintiff