## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**DEBRA STOE,**

      **Plaintiff,**

           **v.**                            **Civil Action No. 16-1618 (JDB)**

**MERRICK B. GARLAND, U.S. Attorney General,**

      **Defendant.**

### MEMORANDUM OPINION

Plaintiff Debra Stoe, a scientist in the Department of Justice's ("DOJ") Office of Science and Technology ("OST"), was denied a promotion in 2014 to serve as OST's Division Director. Mark Greene, a younger man with less experience at OST, received the job instead. The selecting official was plaintiff's then-supervisor Chris Tillery. See Joint Pretrial Statement [ECF No. 41] at 5. Thereafter, Stoe brought suit against her employer, the U.S. Attorney General, alleging that OST's failure to promote her resulted from gender and age discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act. In 2018, this Court granted summary judgment to the government on both claims. Stoe v. Sessions, 324 F. Supp. 3d 176, 182 (D.D.C. 2018). Stoe appealed, and the D.C. Circuit reversed, concluding that "a reasonable jury could find that DOJ's proffered nondiscriminatory reason for denying Stoe the promotion . . . was pretextual and that discrimination was the real reason." Stoe v. Barr, 960 F.3d 627, 629 (D.C. Cir. 2020) (quotation omitted). The case was remanded, and a trial date has now been set.

Both parties have filed motions <u>in limine</u> to exclude certain evidence at trial.  Plaintiff seeks to prohibit post-selection evidence of Greene's job performance.  The government seeks to preclude: (a) testimony by plaintiff's coworker Christine Crossland that Tillery discriminated against her and other women after Tillery became Crossland's supervisor in 2017; (b) lay opinion testimony by plaintiff and Crossland that Tillery's treatment of plaintiff, Crossland, and other women at DOJ was motivated by gender bias; and (c) evidence that Tillery denied plaintiff a similar promotion in 2010, allegedly under circumstances suggesting discrimination.  For the following reasons, the Court will defer ruling on plaintiff's motion until trial and will deny the government's motion.

## <u>Legal Standard</u>

"Although neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence expressly contemplate motions <u>in limine</u>, the practice of allowing such motions has developed over time 'pursuant to the district court's inherent authority to manage the course of trials.'"  <u>Youssef v. Lynch</u>, 144 F. Supp. 3d 70, 80 (D.D.C. 2015) (quoting <u>Luce v. United States</u>, 469 U.S. 38, 41 n.4 (1984)).  "Consistent with the historical origins of the practice, motions <u>in limine</u> are 'designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.'"  <u>Id.</u> (quoting <u>Bradley v. Pittsburgh Bd. of Educ.</u>, 913 F.2d 1064, 1070 (3d Cir. 1990)).  However, "in some instances it is best to defer rulings until trial, [when] decisions can be better informed by the context, foundation, and relevance of the contested evidence within the framework of the trial as a whole."  <u>United States v. Slatten</u>, 310 F. Supp. 3d 141, 143–44 (D.D.C. 2018) (quoting <u>Casares v. Bernal</u>, 790 F. Supp. 2d 769, 775 (N.D. Ill. 2011)).  Here, the parties' motions <u>in limine</u> raise objections under Rules 401, 403, 404(b), and 701 of the Federal Rules of Evidence.

Rule 401 provides that "[e]vidence is relevant if . . . it has any tendency to make a fact" "of consequence in determining the action" "more or less probable than it would be without the evidence." Fed. R. Evid. 401.  Whereas irrelevant evidence is inadmissible, relevant evidence is admissible unless specific grounds for exclusion apply.  See Fed. R. Evid. 402.

Rule 403 instructs that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Rule 403 does not bar all potentially prejudicial evidence.  Instead, the term "unfair prejudice" "means an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one."  United States v. Ring, 706 F.3d 460, 472 (D.C. Cir. 2013) (quoting Fed. R. Evid. 403 advisory committee's note).  "Rule 403 'tilts . . . toward the admission of evidence in close cases."  Id. at 474 (quoting United States v. Moore, 732 F.2d 983, 989 (D.C. Cir. 1984)).

Rule 404(b), in turn, excludes "[e]vidence of any other crime, wrong, or act" besides the subject of the instant lawsuit "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  "Rule 404(b) is a rule of inclusion rather than exclusion," meaning that it only bars evidence that "lacks any purpose but proving character."  United States v. Bowie, 232 F.3d 923, 929–30 (D.C. Cir. 2000) (citing United States v. Crowder, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (en banc)).  Thus, evidence of "other bad acts," may be used for a non-character-related purpose, such as proving motive or intent, see Fed. R. Evid. 404(b)(2), as long as the evidence is not prohibited under Rule 403, see United States v. Mathis, 216 F.3d 18, 26 (D.C. Cir. 2000) (citing United States v. Gaviria, 116 F.3d 1498, 1532 (D.C. Cir. 1997)).

Finally, Rule 701 permits lay opinion testimony that is "'(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge' of the sort that is properly the subject of expert opinion testimony under [Rule] 702." United States v. Williams, 827 F.3d 1134, 1155 (D.C. Cir. 2016) (quoting Fed. R. Evid. 701). Rule 701 "was designed to ensure that any opinions offered by a lay witness are based on personal, 'first-hand knowledge or observation,'" id. (quoting Fed. R. Evid. 701 advisory committee note on proposed rule), "and 'a process of reasoning familiar in everyday life,'" id. (quoting Fed. R. Evid. 701 advisory committee's note to 2000 amendment).

## Analysis

The Court assumes familiarity with the facts of this case, as laid out more fully in Stoe, 324 F. Supp. 3d at 182–185, and Stoe, 960 F.3d at 629–38, and will turn directly to analyzing the parties' motions.

### I.   Plaintiff's Motion in Limine

The Court begins with plaintiff's motion to exclude evidence "relating to the post-selection job performance of the Division Director selectee, Mark Greene" under Rules 401 and 403. See Pl.'s Mot. in Limine ("Pl.'s Mot.") [ECF No. 40] at 1. The government concedes that evidence of how well Greene ultimately performed as the Division Director is irrelevant because that information was unknown at the time of his 2014 selection and thus could not have motivated the selection decision. See Def.'s Opp'n to Pl.'s Mot. ("Def.'s Opp'n") [ECF No. 43] at 5–6. The case law is clear on this point. See McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 359–60 (1995) (reasoning that "[t]he employer could not have been motivated by knowledge it did not have" at the time of the firing decision and "cannot now claim that the employee was fired for [a]

nondiscriminatory reason" based on after-acquired evidence); see also, e.g., St. John v. Napolitano, 20 F. Supp. 3d 74, 95 n.10 (D.D.C. 2013) (excluding post-selection job performance as "irrelevant because it had not yet occurred at the time of . . . selection"), aff'd sub nom. St. John v. Johnson, 608 F. App'x 6 (D.C. Cir. 2015); Bruno v. W.B. Saunders Co., Civ. A. No. 86-2282, 1988 WL 117874, at *11 (E.D. Pa. Oct. 31, 1988) ("[I]n the context of employment discrimination, the inquiry is limited to the empirical knowledge of the employer at the time he made the hiring decision.  Hindsight bootstrapping is impermissible.").

Nevertheless, the government seeks to present testimony that, following Greene's 2014 promotion to Division Director, Greene implemented a new vision "for standards development and conformity assessment"[1] on a different theory of relevance.   See Def.'s Opp'n at 2, 3. According to the government, this testimony is not admissible to show how well Greene performed as Director, but instead to corroborate the interview panelists' testimony that they were "impressed" by "the vision that [Greene] articulated" at his interview "for the future of standards development and conformity assessment" and, in fact, chose Greene for the Director role "based on the strength of his interview."  See id. at 1, 3.

The Court agrees with the government that in theory limited evidence of Greene's post-2014 conduct is relevant.  "Once the employer has articulated a non-discriminatory explanation for its [employment] action, . . . the issue is not 'the correctness or desirability of the reasons offered . . . [but] whether the employer honestly believes [those] reasons.'"  Fischbach v. D.C. Dep't of Corr., 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting McCoy v. WGN Cont'l Broad. Co., 957 F.2d 368, 373 (7th Cir. 1992)); see also Ames v. Nielsen, Civ. A. No. 13-1054 (APM), 2018

---

[1] A "conformity assessment program" is, in Tillery's words, a program to "ascertain how well a piece of equipment or technology . . . conforms to an established standard."  See Dep. of George Tillery Tr. (July 28, 2017) ("Tillery Dep. Tr.") [ECF No. 45-1] at 104:9–15.

WL 5777391, at *3 (D.D.C. Nov. 2, 2018) ("[T]he question of pretext turns on whether the employer reasonably and honestly believed the proffered non-discriminatory reason for the adverse action.").  Evidence that Greene actually implemented a visionary new standards process as Division Director substantiates the government's defense "that Tillery and the other members of the interview panel honestly and reasonably believed that the answers that Dr. Greene provided during the interview" about his new vision for such a process "warranted his selection." See Def.'s Opp'n at 3.  Conversely, as the government puts it, if the National Institute of Justice ("NIJ") (of which OST is a part, see Stoe, 324 F. Supp. 3d at 182) had not changed its standards process following Greene's 2014 selection, "the jury might find Tillery's explanation" that he selected Greene based on Greene's vision to redesign that process "less credible." See Def.'s Opp'n at 3–4.  This type of support for a fact of consequence is sufficient to meet the "low threshold" for relevance under Rule 401.  See Slatten, 310 F. Supp. 3d at 145.

Hence, on this theory of relevance, the government may present limited testimony establishing only that: (1) Greene did, in fact, implement the "vision that [he] initially outlined during his interview," see Def.'s Opp'n at 2; and (2) Greene's follow-through on this vision was of interest or importance to Tillery.  Testimony describing how Greene implemented his vision, the scope or success of the new system he created, or how impressive Greene's efforts were is irrelevant and thus barred by Rule 401.

As this discussion suggests, however, the government's theory of relevance requires a particular foundation to be laid.  Specifically, the post-2014 evidence at issue is only relevant if the government first presents testimony that (1) Greene articulated a new vision for standards development and conformity assessment in his interview; and (2) the interview panel members were impressed by that vision and rested their selection decision in any part on it.  Without this

foundation, the post-2014 evidence serves no corroborating purpose.  Thus, the Court considers whether the government can offer sufficient foundation for the post-2014 evidence.

The government's opposition brief solely discusses Tillery's deposition testimony and expected trial testimony about Greene's vision.  In fact, the Court has no evidence before it that the other two interview panelists recall Greene discussing a new vision at his interview or factored that vision into their interview evaluation.  Cf. Pl.'s Reply in Supp. of Pl.'s Mot. [ECF No. 45] at 6 n.4 (stating no such evidence exists).  For the time being, then, the Court will only evaluate whether a proper foundation could be provided based on Tillery's testimony.

At his deposition, Tillery testified that "[t]he thing that struck [him] the most" about Greene's interview "was a nuanced appreciation of conformity assessment."  Tillery Dep. Tr. at 103:16–21.  Tillery "d[id] not recollect the specifics."  Id. at 105:1–7.  Tillery discussed the new conformity assessment system that Greene had implemented post-2014 and stated that "what I want to say I took away from" Greene's interview was an "inkling of the fact" that there might be a new way to do a conformity assessment.  Id. at 105:1–22; 106:1–7.  When questioned further, Tillery clarified that "it's not that [Greene] was proposing a new process" at the interview itself, but that Tillery recalls from the interview that Greene "had an understanding that. . . provided that door that [NIJ] might be able to go in a different direction."  Id. at 107:1–9; 108:3–6.

Notwithstanding the government's position, this testimony does not establish that Greene articulated a new vision for the future of standards development and conformity assessment at his interview.  See Def.'s Opp'n at 1, 2.  At best, it demonstrates that Greene exhibited a "nuanced" "understanding" and "appreciation" of conformity assessment that led Tillery to believe that Greene had the potential to articulate a new vision.  But without a more specific link between what Greene actually said during his interview and what he then did as Division Director, any evidence

of the latter has substantially less corroborative value and instead may confuse the jury about what

to make of this evidence, leaving the jury instead to focus on how good a Director Greene

ultimately was.  Under these circumstances, such evidence would likely be inadmissible under

Rule 403.

That would be the end of the Court's analysis if the government did not anticipate that

Tillery will speak somewhat differently about this subject at trial.  According to the government,

Tillery plans to testify at trial that:

> At his interview, Dr. Greene described a collaborative process for
> standards development and conformity assessment in which outside
> groups would be responsible for developing standards within a
> general framework that [NIJ] established and with [NIJ's] input.
> [NIJ] would still ultimately be responsible for approving and
> certifying the standard.

Def.'s Opp'n at 2.  If Tillery does testify to this effect, then the Court agrees that evidence that

Greene did, in fact, implement "the vision that [he] initially outlined during his interview" and that

this was of importance to Tillery is relevant on the theory described above.  See id.  In such

instance, plaintiff would have ample opportunity to cross-examine Tillery about the

inconsistencies with his deposition testimony.  And while the Court recognizes that there is some

risk that the jury could construe the post-2014 implementation evidence as proof of how well

Greene performed in the Division Director role, this risk is sufficiently mitigated by the very

narrow scope of the testimony that may be offered.  Under those circumstances, the Court does

not expect that the probative value of such limited testimony would be substantially outweighed

by a danger of unfair prejudice to plaintiff and thus barred by Rule 403.

In the end, because the Court cannot predict how Tillery will testify at trial, the Court will

defer ruling on plaintiff's motion in limine for now.  If the government believes it has established

the proper foundation to admit limited evidence of Greene's post-2014 conduct—either through

Tillery's trial testimony or the testimony of the other interview panelists (or even of Greene)—it may move to admit that evidence at that time, and the Court will issue a final ruling on the issue then.

## II.     The Government's Motion **in Limine**

### A.  "Me too" Testimony

Next the Court considers the government's request to exclude testimony by plaintiff's coworker Christine Crossland regarding "Tillery's differential treatment of Crossland and other women at DOJ." See Joint Pretrial Statement at 4.  Based on her sworn declaration, Crossland's testimony is expected as follows: Crossland worked with plaintiff for nearly two decades, although the two women worked primarily in different offices at the NIJ.  See Decl. of Christine Crossland ("Crossland Decl.") [ECF No. 44-1] ¶¶ 2, 4.  Crossland also worked with Tillery "for many years," and he ultimately became her supervisor in 2017.  Id. ¶ 5.  At "multiple NIJ staff meetings over the years," Crossland "observe[d] the difference in the ways [Tillery] interacts with female colleagues versus male colleagues," and in her view, he exhibited bias towards her, plaintiff, and other women at DOJ.  Id.  As Crossland's supervisor, Tillery "tends to ignore [Crossland's] viewpoints, even those regarding [her] area of expertise, which is Indian tribal engagement on criminal justice policy matters."  Id. ¶ 10.

Crossland recounts one specific incident from 2017 where Tillery "told OST staff who were working on managing a project with a tribe to ignore [her] guidance to follow the protocols regarding interactions with the tribe."  Id. ¶ 11.  Crossland brought the issue "to the attention of NIJ leadership," at which point Tillery complained to Crossland's first-line male supervisor "that he was exasperated with [Crossland] because of [her] interference."  Id.  Crossland states that, "[i]n the end, [she] was proven correct when that project was shut down," but the interaction was,

in her view, "typical of the lack of respect that [Tillery] frequently shows toward his female colleagues." Id.

The government initially moved to exclude all of Crossland's testimony "regarding Tillery's alleged differential treatment of other women besides Plaintiff," including of Crossland herself. See Def.'s Mot. in Limine ("Def.'s Mot.") [ECF No. 39] at 4.[2]  In reply, the government scaled back its objection, stating that it does not seek to exclude Crossland's testimony to the extent she "can provide a firsthand account of Tillery's interactions . . . [that] occurred close in time to Plaintiff's 2014 non-selection." Def.'s Reply in Supp. of Def.'s Mot. ("Def.'s Reply") [ECF No. 46] at 6. Such testimony, the government concedes, is relevant. See id.  Instead, the government asks to prohibit only Crossland's testimony "about any events that occurred after [Tillery] became Crossland's supervisor in 2017." See id. at 5.  The government rests its objection on Rules 401, 403, and 404(b).

As the government does not deny, "[e]vidence of an employer's past discriminatory . . . behavior toward other employees—so-called 'me too' testimony—may, depending on the circumstances, be relevant to whether [the] employer discriminated . . . against [] plaintiff." Nuskey v. Hochberg, 723 F. Supp. 2d 229, 233 (D.D.C. 2010) (citing Sprint v. Mendelsohn, 552 U.S. 379, 385–88 (2008)); see Def.'s Reply at 5.  "Such testimony is neither per se admissible nor per se inadmissible." Nuskey, 723 F. Supp. 2d at 233.  "Instead, as with any other piece of evidence, the admissibility of 'me too' evidence turns on its relevance and unfair prejudice." Holmes-Martin v. Sibelius, Civ. A. No. 07-2128, 2011 WL 13244746, at *3 (D.D.C. Mar. 3, 2011) (citing Nuskey, 723 F. Supp. 2d at 233).  "This inquiry is 'fact-based and depends on many factors,

---

[2] The government also originally moved to exclude similar testimony by another coworker named Angela Parmley-Moore. See Def.'s Mot. at 4.  Because plaintiff "no longer intends to call Angela Parmley-Moore as a witness at trial," see Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n") [ECF No. 44] at 2 n.1, the Court will not address Parmley-Moore's expected testimony.

including how closely related the evidence is to the plaintiff's circumstances and theory of the case.'" Id. (quoting Sprint, 552 U.S. at 388).  When considering the admissibility of "me too" evidence, courts in this District frequently assess: (1) "whether the same decisionmakers were involved"; (2) "whether the witness and the plaintiff were treated in a similar manner"; (3) "whether the witness and the plaintiff were otherwise similarly situated"; and (4) "whether such past discriminatory behavior by the employer is close in time to the events at issue in the case." Id. (quoting Elion v. Jackson, 544 F. Supp. 2d 1, 9 (D.D.C. 2008)); accord Parker v. Nat'l R.R. Passenger Corp., 214 F. Supp. 3d 19, 30 (D.D.C. 2016); Barnett v. PA Consulting Grp., Inc., 35 F. Supp. 3d 11, 22 (D.D.C. 2014); Hayes v. Sebelius, 806 F. Supp. 2d 141, 144–45 (D.D.C. 2011).

Weighing these factors, the Court finds that Crossland's anticipated testimony about Tillery's discriminatory conduct after he became her supervisor in 2017 is probative of Tillery's motive in denying plaintiff the 2014 Director role and not unduly prejudicial under Rule 403. Crossland and Stoe are both women, and they both allege similar types of gender discrimination by Tillery while he was acting as their supervisor—namely, that he treated them with a lack of respect and dismissed or belittled their opinions.  Compare Crossland Decl. ¶¶ 10–11, with Decl. of Debra Stoe (Dec. 11, 2017) ("Stoe Decl.") [ECF No. 44-2] ¶ 16.  To be sure, Crossland has not alleged that Tillery denied her a promotion.  But "the exact conduct allegedly endured need not be identical" for such "me too" evidence to be admissible.  Herbert v. Architect of the Capitol, Civ. A. No. 09-1719 (CKK), 2013 WL 12399109, at *2 (D.D.C. July 23, 2013).  And Crossland's proposed testimony would not only offer independent evidence of Tillery's discriminatory intent, but it would also serve, as the D.C. Circuit noted, to "corroborate[]" plaintiff's testimony regarding "Tillery's sexist treatment against women."  See Stoe, 960 F.3d at 643.

The government, for its part, concedes most of this analysis, stating that "any female subordinate employee who alleges that Tillery treated her differently during staff meetings or presentations (e.g., by speaking to her in a patronizing manner) than Tillery treated his male subordinate employees" should be permitted to testify to this differential treatment, provided it "occurred close in time to the events at issue in this lawsuit." See Def.'s Reply at 8.[3]

The more difficult (and contested) question then is whether Crossland's testimony about Tillery's conduct is "close" enough "in time to the events at issue in the case" to be probative of his intent in 2014 and not unfairly prejudicial to an extent barred by Rule 403. See Nuskey, 723 F. Supp. 2d at 233. As far as the Court can tell, Crossland is expected to testify to events that occurred in 2017 and perhaps 2018. Cf. Pl.'s Opp'n to Def.'s Mot. at 11 (anticipating that Crossland will testify to Tillery's behavior that "occurred a couple years after Stoe's non-selection" in 2014).

"There is . . . no bright line rule for determining when evidence is too remote to be relevant." Ansell v. Green Acres Contracting Co., 347 F.3d 515, 525 (3d Cir. 2003). And given the substantial similarities between Tillery's alleged treatment of Crossland and plaintiff, the Court finds that Crossland's testimony about events that occurred about three years after plaintiff's 2014 non-selection is sufficiently close in time to still be quite probative of Tillery's intent. This is particularly true because Crossland is expected to testify not simply to an isolated incident of discrimination in 2017 or 2018, but to a consistent pattern of discrimination by Tillery toward women at DOJ over a period of years that both predates and postdates plaintiff's 2014 non-

---

[3] The Court rejects the government's proposition that Crossland's testimony should be limited to differential treatment "during staff meetings or presentations." See Def.'s Reply at 8. While plaintiff's sworn declaration states that Tillery exhibited discriminatory bias against her "especially at meetings and presentations," see Stoe Decl. ¶ 16 (emphasis added), it does not suggest that these spaces were the only places at work where she endured differential treatment by Tillery. Furthermore, because "the exact conduct allegedly endured need not be identical" for such "me too" evidence to be admissible, Herbert, 2013 WL 12399109, at *2, the Court will not cabin Crossland's testimony to these two specific office settings.

selection.  See Pl.'s Opp'n at 11; Crossland Decl. ¶¶ 5–10; cf. United States v. Watson, 894 F.2d 1345, 1349 (D.C. Cir. 1990) ("[L]ater acts are most likely to show the accused's intent when 'they are fairly recent and in some significant way connected with prior material events.'" (quoting United States v. Childs, 598 F.2d 169, 174 (D.C. Cir. 1979)).

Furthermore, although similar discriminatory acts by Tillery that occurred in 2017 or 2018 may be less probative of his intent than acts that took place in 2014, the gap in time is not so great that the probative value of the 2017 and 2018 testimony is substantially outweighed by any risk of unfair prejudice to the government.  Cf. Ansell, 347 F.3d at 524–25 (holding district court did not abuse its discretion in admitting "me too" evidence that regarded an incident twenty months after the firing at issue); Nuskey, 723 F. Supp. 2d at 233 (excluding "me too" testimony regarding discrimination by a different decisionmaker that "occurred approximately ten years before the events at issue in the instant case"); Tennison v. Circus Circus Enters., Inc., 244 F.3d 684, 689 (9th Cir. 2001) (excluding "me too" evidence that occurred five and six years before the events in question where substantially more recent "me too" evidence was available).  In fact, the government has not identified any unfair prejudice that might result from this testimony.

Hence, the Court concludes that Crossland's anticipated testimony about Tillery's belittling and disrespectful treatment of her and other women at DOJ after he became Crossland's supervisor in 2017 is admissible under Rule 401 and not barred by Rule 403.  While the government also moves to exclude this testimony under Rule 404(b), that objection simply rehashes that government's Rule 403 argument, which the Court has now rejected.  See Def.'s Reply at 11 (conceding under Rule 404(b) that Crossland's "me too" testimony is probative of Tillery's discriminatory motive or intent, but arguing that the testimony should nonetheless be excluded under Rule 403); see also Nuskey, 723 F. Supp. 2d at 233 & n.2 (explaining that "me

too" testimony "does not run afoul of Rule 404(b) . . . because that Rule explicitly contemplates the admission of 'other acts' as evidence to show motive or intent").  The Court will therefore deny the government's motion <u>in limine</u> to exclude Crossland's testimony regarding Tillery's differential treatment of her and other women in 2017 and 2018.

### A.  Lay Opinion Testimony

The government also moves to exclude under Rule 701 lay opinion testimony from plaintiff and Crossland "about Tillery's motives for denying Plaintiff the [2014 Division Director] position or for his alleged differential treatment of Plaintiff or other women on other occasions."  Def.'s Mot. at 19.  Plaintiff "does not intend to solicit opinion testimony from Crossland as to whether the 2014 non-selection was discriminatory."  <u>See</u> Pl.'s Opp'n at 12.  Hence, the parties dispute boils down to: (1) whether plaintiff may opine that Tillery's motive for denying her the 2014 promotion was gender bias; and (2) whether plaintiff and Crossland may opine that "Tillery treats women worse than men and/or discriminated against women on other occasions."  <u>See</u> <u>id.</u> at 12, 14.  The Court will address these issues in reverse order.[4]

Courts have generally held lay opinion testimony admissible "in discrimination cases when given by a person whose position with the defendant entity provides the opportunity to personally observe and experience the defendant's policies and practices."  <u>Gossett v. Okla. ex rel. Bd. of Regents for Langston Univ.</u>, 245 F.3d 1172, 1179 (10th Cir. 2001) (collecting cases).  Conversely, courts consistently exclude lay opinion testimony under Rule 701 "that amounts to a naked speculation concerning the motivation for a defendant's adverse employment decision."  <u>Hester v. BIC Corp.</u>, 225 F.3d 178, 182 (2d Cir. 2000); <u>see also</u> <u>Barnett</u>, 35 F. Supp. 3d at 21–22.

---

[4] The parties briefing on this issue only focuses on testimony in support of plaintiff's gender discrimination claim.  To the extent that Crossland or plaintiff seek to provide lay opinion testimony in support of plaintiff's age discrimination claim, the Court cannot rule on the permissibility of such testimony until each witness supplies the bases for any such opinion at trial.

The government's position is that, while plaintiff and Crossland are "'free to testify fully as to [their] own observations of [Tillery's] interactions with the plaintiff or with other employees,'"—meaning what he did and how he did it—"they should not be permitted to opine" that Tillery's differential treatment of women was motivated by gender bias, since that would be pure speculation.  See Def.'s Reply at 20–21 (quoting Barnett, 35 F. Supp. 3d at 21).  The Court disagrees.  Plaintiff's and Crossland's opinions on this subject derive from personal observations of Tillery over a substantial timeframe.  For example, plaintiff plans to testify that "[o]ver the years . . . Tillery has interrupted [her] while speaking, refused to let [her] finish speaking, challenged [her] authority and belittled [her] in front of male colleagues, become angry when [she has] corrected a mistake . . . he made, or . . . tak[en] credit for [her] ideas"—and, importantly, that Tillery did "not treat [her] male colleagues in this manner."  See Stoe Decl. ¶ 16.  Her opinion that Tillery's conduct in these instances was motivated by "bias against women" is not "naked speculation," but a view that derives from her first-hand experience with how Tillery repeatedly interacted with male and female subordinates in the office.

The same is true of Crossland's anticipated lay opinion testimony that Tillery has treated her and plaintiff differently due to their gender.  See Crossland Decl. ¶¶ 6, 9, 10.  Crossland is expected to testify that "[f]or many years" Tillery treated plaintiff "in a way that is different, and markedly worse, than he treats his male subordinates."  See id. ¶ 7.  To substantiate this opinion, Crossland describes her personal "[f]requent[]" observations that Tillery has talked to plaintiff in a "patronizing, condescending, [and] belittling" manner, including by "interrupt[ing], undermin[ing], and insult[ing] [her] in meetings" in a way that Crossland has never seen him speak to a male colleague.  See id. ¶ 8.  Crossland offers similar accounts to ground her opinion of how Tillery has discriminated against her.  See id. ¶¶ 10, 11.

Considering the bases for both women's opinions, the Court does not find that opinion testimony from plaintiff and Crossland that "Tillery treats women worse than men and/or discriminated against women on other occasions" is barred by Rule 701; rather, such testimony is "rationally based on [each woman's] perception," "helpful" to assessing Tillery's motive for denying plaintiff the 2014 promotion, and not based on any type of specialized expertise.  See Williams, 827 F.3d at 1155 (quoting Fed. R. Evid. 701); see also Gossett, 245 F.3d at 1178–80 (admitting affidavit from teacher describing her impression of a pattern of discrimination at the school directed at male students in general and plaintiff in particular, which was based on concrete facts within her observations and experiences while teaching at the school); Shapiro v. City of New York, No. 13cv8647 (DLC), 2015 WL 4002437, at *9 (S.D.N.Y. 2015) (concluding that employee's lay opinion testimony that she had witnessed religiously discriminatory conduct at work was admissible under Rule 701 because it was based on a "pattern of discrimination" toward Jewish coworkers that she personally observed).

The remaining question is whether plaintiff may testify under Rule 701 that Tillery's decision to deny her the 2014 promotion was motivated by gender bias.  In her opposition brief, plaintiff did not explain why she should be allowed to present this testimony at trial.  See Pl.'s Opp'n at 12–15 (explaining only why Crossland's anticipated testimony does not violate Rule 701).  But that is likely because the government only mentioned this objection in passing in its motion and directed its substantive arguments toward Crossland's lay opinion testimony.  See Def.'s Mot. at 19.  Given that plaintiff's sworn declaration contains statements of her opinion that Tillery's refusal to promote her in 2014 was motivated by gender bias, see Stoe Decl. ¶¶ 15, 17, the Court will address whether such testimony is permissible at trial.

The government's argument is that allowing plaintiff to opine on Tillery's motive in rejecting her for the 2014 promotion is not "helpful" within the meaning of Rule 701 because "the jury will be in as good a position as [plaintiff] to draw the inference as to whether or not [Tillery] was motivated by an impermissible animus." See Def.'s Reply at 20 (quoting Barnett, 35 F. Supp. 3d at 21). When a "witness has not identified the objective bases for [her] opinion . . . the opinion does not help the jury but only tells it in conclusory fashion what it should find." United States v. Hampton, 718 F.3d 978, 981 (D.C. Cir. 2013) (emphasis added) (quoting United States v. Rea, 958 F.2d 1206, 1216 (2d Cir. 1992)); see also Willco Kuwait (Trading) S.A.K. v. deSavary, 843 F.2d 618, 624 (1st Cir. 1988) (explaining that lay opinion testimony that does little more than tell the jury what result to reach should not be admitted) (citation omitted). But to the extent that plaintiff identifies the bases for her opinion about Tillery's motive for denying her the 2014 promotion—based, for example, on her personal observations of how Tillery has treated her (and other women at DOJ) previously and how Tillery conducted himself during the 2014 non-selection process—the Court finds that opinion would be helpful to the jury because it offers the perspective of someone with first-hand knowledge of Tillery's behavior on a fact of consequence in the case. See Gossett, 245 F.3d at 1179–80. How helpful it may be, of course, is a matter for the jury to decide.

Moreover, it makes little sense to preclude a plaintiff who is suing because she believes that she was discriminated against based on her gender from presenting any statement of that opinion to the jury. Cf. White v. McHugh, Civ. A. 14-0484-WS-C, 2016 WL 2743529, at *3 (S.D. Ala. May 11, 2016) (rejecting the notion that Rule 701 prohibits "a plaintiff from making th[e] basic statement" that she believes "she lost promotions due to race/sex/age discrimination" (emphasis added)). After all, this "explains why [plaintiff] is bringing suit," id., and therefore may

be helpful to "clearly understanding" her testimony, see Fed. R. Evid. 701(b).  Indeed, the government has not cited any court decision that prohibited a plaintiff in an employment discrimination case from presenting any opinion on her employer's motive even though the plaintiff had identified the bases for that opinion based on her first-hand observations.

Most of the government's cases, for that matter, concern lay opinion testimony by third-parties; and it is no surprise that such individuals usually lack sufficient knowledge of the employment action at issue to offer a "helpful" opinion on an employer's intent.  See, e.g., Barnett, 35 F. Supp. 3d at 22 (excluding co-worker's "conclusory" testimony that he "remembers thinking, my god, they just walked into a lawsuit" when he heard of plaintiff's termination); Hester, 225 F.3d at 184 (precluding four co-workers from testifying about employer's motive because they were not involved in defendant's decision-making process, had no personal knowledge of it, and had no basis to know if plaintiff was performing adequately at work).

The Court will therefore deny the government's blanket request to exclude all opinion testimony by plaintiff that Tillery's decision to deny her the 2014 promotion was motivated by gender bias.  Cf. Duran v. Cty. of Clinton, Civ. A. No. 4:14-CV-2047, 2019 WL 2867273, at *4 (M.D. Pa. July 3, 2019) (denying defendant's motion to preclude all opinion testimony by plaintiff that his employer had "terminated him because of his disabilities" but reserving judgment on what precise opinion could be offered until the Court heard plaintiff's testimony at trial regarding the bases for this opinion); Miller v. Alldata Corp., 14 F. App'x 457, 465 (6th Cir. 2001) (holding district court did not abuse its discretion in allowing plaintiff to present opinion testimony that defendant had "discriminated against her"); Barefield v. Bd. of Trustees of Cal. State Univ., Bakersfield, 500 F. Supp. 2d 1244, 1264 & n.11 (E.D. Cal. 2007) (ruling that plaintiff's opinion testimony that "she felt that she was discriminated against based upon race because there was no

other reason to explain why she was not interviewed for the position when she exceeded the qualifications for the position" was not improper under Rule 701).

In sum, the Court will deny the government's Rule 701 motion to prohibit all lay opinion testimony by plaintiff and Crossland that Tillery's treatment of women was motivated by gender bias as well as all lay opinion testimony by plaintiff that Tillery denied her the 2014 promotion based on gender bias. Any objections to the exact scope of opinion testimony that may be offered and the precise content of it can be raised and resolved at trial.[5]

### B.  2010 Non-Selection

Finally, the government moves to prohibit plaintiff from presenting evidence that her non-selection for the Division Director position in 2010 was discriminatory. See Def.'s Mot. at 12. In 2010, plaintiff also applied for and was denied a promotion by Tillery to serve as OST's Division Director. See Joint Pretrial Statement at 3–5. Davis Hart, whom the government plans to call as a witness at trial, was chosen over plaintiff. See id. at 8–9. The government does not seek to exclude all evidence relating to the 2010 non-selection. Namely, the government agrees that evidence of the 2010 non-selection is admissible to show "that the selection process that [DOJ] used in 2010 was different than the one used in 2014" and "that the reasons Tillery provided for not selecting her for the 2010 position (i.e., that she lacked supervisory experience) did not comport with the 2014 decision to select another candidate." See Def.'s Reply at 12–13. But the government disputes that plaintiff should be permitted to "introduce[e] the 2010 non-selection as a prior act of discrimination under Rule 404(b) for the purpose of showing Tillery's discriminatory

---

[5] For instance, the government specifically challenges Crossland's statement that she was "dismayed to see" the program that plaintiff created "given to Mark Greene to run" on the grounds of relevance, undue prejudice, and improper lay opinion. See Def.'s Mot. at 9; Crossland Decl. ¶ 14. Plaintiff has not explained, and the Court does not see, how this statement is "helpful" under Rule 701 to determining any fact of consequence in the case or relevant under Rule 401.

motive or intent in 2014" because plaintiff "never made [this contention] previously" and such evidence is otherwise inadmissible under Rules 401, 403, and 404(b).  See Def.'s Reply at 13; see also Def.'s Mot. at 14–16.

The Court starts with the government's failure-to-disclose argument.  See Def.'s Reply at 13–20.  The government's "interrogatories asked Plaintiff to 'describe in detail each and every fact' that she contended supported" her 2014 discrimination claim, id. at 14, and she "made no reference at all to her 2010 non-selection" in her response, Def.'s Mot. at 14.  The government emphasizes that plaintiff also never contended that her 2010 non-selection was discriminatory "in her deposition testimony[,] [the] multiple affidavits Plaintiff submitted during this case, and the previous administrative proceedings."  Id.  Consequently, because the government allegedly lacked "fair notice" of this contention and "was thus denied an opportunity to take discovery from Plaintiff on this issue," the government posits that it "would be unfairly prejudiced" if the Court permitted plaintiff to present evidence that her 2010 non-selection was discriminatory at trial.  See Def.'s Reply at 16.  For her part, plaintiff highlights that she requested all documents relating to the 2010 non-selection in discovery, see Pl.'s Opp'n at 20, and that the 2010 non-selection has repeatedly been at issue since the case was filed in 2017, see id. at 28.

During discovery plaintiff could have more clearly presented her position that the 2010 non-selection was itself discriminatory.  But given plaintiff's other uses of the 2010 non-selection evidence, and the fact that she did allege that "Tillery's refusal to promote [her] over the years" evidences his gender bias, see Stoe Decl. ¶ 17 (emphasis added), it is hardly a surprising line of argument.  Furthermore, the government's pronouncement that plaintiff has never alleged that her "2010 non-selection was also discriminatory," see Def.'s Mot. at 12, is simply not true.  Indeed, the government made the same argument to the D.C. Circuit nearly two years ago after plaintiff

20

stated on appeal that her 2010 non-selection provided evidence of Tillery's discriminatory motive in 2014.  See Ex. E to Pl.'s Opp'n, Appellee's Br. [ECF No. 44-5], at 44 ("On appeal, Stoe now argues, for the first time, that Tillery's decision to select Hart over Stoe for the role in 2010 is further suggestive of bias." (internal quotation marks and citation omitted)).  While the government may take issue with how plaintiff raised this issue before the D.C. Circuit, see Def.'s Reply at 16, it cannot deny that it was on notice of her position.  The government could have requested leave to seek additional discovery on this issue following remand, but it did not.  Any argument of unfair surprise, then, is hyperbolic.

The argument also has no legal support.  The government offers no case or rule suggesting that a plaintiff's failure during discovery to state that a specific event supports her claim warrants the extreme sanction of excluding the plaintiff from making that contention at trial—particularly where the underlying subject was itself a topic of discovery.[6]  The cases cited by the government involve instances where a party failed to produce a trial exhibit or to identify a witness during discovery, which is not comparable to the situation here.  See Def.'s Mot. at 13.  Hence, the Court will not preclude plaintiff's testimony about the discriminatory nature of her 2010 non-selection on the ground that plaintiff failed to disclose this theory previously.  The government may, of course, cross-examine plaintiff as to any perceived inconsistencies between plaintiff's discovery responses (or deposition testimony) and her testimony at trial.  Cf. Herbert v. Architect of the Capitol, 920 F. Supp. 2d 33, 44 (D.D.C. 2013) ("Any inconsistencies that exist between Plaintiff's deposition testimony and his testimony at trial . . . are fodder for cross-examination at trial and

---

[6] The government originally sought relief for plaintiff's failure to disclose under Federal Rule of Civil Procedure 37(c).  See Def.'s Mot. at 13 & n.6.  That Rule directs that "a party [that] fails to provide information or identify a witness by Rule 26(a) or (e)," is "not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  But, as plaintiff rightly points out—and the government does not contest in reply—"Rule 26 does not mandate disclosure of potential theories of liability or conclusions that a party can draw from the evidence."  See Pl.'s Opp'n at 25 n.6.  The government's Rule 37(c) argument is thus conceded and unpersuasive.

shall go to the weight that the jury attaches to Plaintiff's claims about the investigation—not to whether evidence about the investigation is admissible.").

The government's remaining arguments that evidence of the discriminatory nature of the 2010 non-selection is inadmissible are likewise unavailing.  In reply, the government seems to abandon its position that the 2010 non-selection is irrelevant to prove Tillery's discriminatory motive—and for good reason: this Court already recognized that "the facts of the 2010 promotion decision can act 'as background evidence' regarding the 2014 promotion claim," even though the 2010 non-selection does not provide an independent source of liability in this case.  Stoe, 324 F. Supp. 3d at 197 n.13 (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002)); see also Pleasants v. Allbaugh, 285 F. Supp. 2d 53, 55 (D.D.C. 2003) ("[C]ourts have allowed parties to introduce—as background evidence—factual allegations that support time-barred claims insofar as they bear upon timely claims.").

In any event, the Court will more thoroughly analyze the relevance of the 2010 evidence now.  To be probative of Tillery's motive in 2014, the 2010 non-selection "must meet a threshold level of similarity" to the 2014 non-selection.  See Bell v. Gonzales, No. Civ. A. 03-163 (JDB), 2005 WL 3555490, at *2 (D.D.C. Dec. 23, 2005); see also Pintro v. Rosenworcel, Civ. A. No. 13-231 (RBW), 2021 WL 3616838, at *5 (D.D.C. Aug. 16, 2021) ("Only discrimination of the same character and type as that is alleged is probative.") (cleaned up) (citation omitted).  The government does state that the two non-selections are dissimilar in "character and type," see Def.'s Reply at 19–20, but it fails to offer any meaningful or fact-specific argument in this regard.

The nature of the two Division Director roles that plaintiff was denied appears nearly identical, the non-selections took place only four years apart, Tillery was the selecting official in both instances, and twice he chose a man who plaintiff says was "more junior and less

experienced" than her.  See Ex. D to Pl.'s Opp'n, Appellant's Br. [ECF No. 44-4] at 13–14, 39–40; Pl.'s Opp'n at 26; see also Pintro, 2021 WL 3616838, at *4 (concluding that plaintiff's prior non-selections within the preceding five years were sufficiently "similar" to the non-selection at issue where "the nature of the other positions for which the plaintiff was not selected were similar," the "same decision-maker" failed to select plaintiff in all instances, and "for each of the non-selections," the enhanced job responsibilities were given to individuals of a different race).[7] Hence, the Court finds that the allegedly discriminatory nature of plaintiff's 2010 non-selection is sufficiently similar to the nature of the 2014 non-selection to be probative of Tillery's intent in 2014.

The government's remaining Rule 403 and 404(b) objections, once again, fold into one. Recall that "evidence of other acts of discrimination similar to the discrimination charged may be admitted to show motive or intent" under Rule 404(b), provided that the probative value is not substantially outweighed by the danger of unfair prejudice under Rule 403.  See Williams v. Johanns, 245 F.R.D. 10, 13 (D.D.C. 2007), aff'd, 563 F. Supp. 2d 27 (D.D.C. 2008).  The government's primary argument regarding unfair prejudice is that, had it known plaintiff intended to raise this argument at trial, it would have "liked to inquire during discovery what is the factual basis for Plaintiff's contention that the 2010 non-selection was the result of unlawful discrimination, what were the circumstances in 2010 that suggested discrimination or pretext, and what is the basis for her contention, if any, that she was better qualified than Hart in 2010."  See Def.'s Reply at 17.  But again the 2010 non-selection was not an unknown subject during

---

[7] The government tries to distinguish Pintro on the ground that it involved "eight separate non-selections," at least some of which "occurred close in time to the 2008 non-selection" at issue in the case.  See Def.'s Reply at 19–20.  Yet, the 2010 non-selection in plaintiff's case likewise fits into what she alleges to be a pattern of prior acts of discrimination by Tillery that both precede and postdate her 2014 non-selection.  See generally Stoe Decl.  Given the substantial similarities between the 2010 and 2014 non-selections, moreover, the Court does not find that a four-year gap in time provides a sufficient basis to exclude evidence of the former under either Rule 401 or 403.

discovery.  The government already "has access to and control of all documents" related to the 2010 non-selection, as well as to Tillery and Hart, who are the only other individuals with first-hand knowledge of that non-selection.  See Pl.'s Opp'n at 24 n.5.  And the government can thoroughly cross-examine plaintiff about the 2010 non-selection at trial.  See Def.'s Reply at 17. Barring plaintiff under Rule 403 from presenting evidence that her 2010 non-selection was discriminatory on the ground that the government would have liked to explore this topic further in discovery is simply not warranted.

To the extent that the government posits that allowing plaintiff to present her 2010 non-selection as a prior discriminatory act is impermissible because it will confuse the jury—a contention the government again seems to have abandoned on reply—"any risk of prejudice . . .can be sufficiently mitigated through 'a limiting instruction so that the jury understands that evidence of prior, time-barred acts is for background information only and is not evidence of separate, actionable claims.'"  Pintro, 2021 WL 3616838, at *7 (quoting Pleasants, 285 F. Supp. 2d at 55). The Court will determine the proper text of this instruction after it receives the parties' submissions.  In the meantime, because the Court finds that the probative value of the 2010 non-selection is not substantially outweighed by the danger of unfair prejudice to the government, the Court will deny the government's motion to prohibit plaintiff from presenting any evidence that her 2010 non-selection was discriminatory under Rules 401, 403, and 404(b).[8]

---

[8] The D.C. Circuit has recognized that "past acts of [] discrimination [are] relevant to prove [the defendant's] motive in his actions towards [plaintiff]," notwithstanding "the risk of time-consuming collateral inquiries."  See Miller v. Poretsky, 595 F.2d 780, 784 (D.C. Cir. 1978).  Accordingly, although the Court hopes the parties will be mindful about not transforming a substantial portion of this trial into a mini-trial on plaintiff's 2010 non-selection, this type of time-related concern does not warrant "prohibit[ing] the plaintiff from presenting relevant evidence in support of her claim."  See Pintro, 2021 WL 3616838, at *8.

**<u>Conclusion</u>**

For the foregoing reasons, the Court will defer ruling on plaintiff's motion <u>in limine</u> to exclude evidence that Greene implemented a new standards development and conformity assessment process as Division Director until the Court can assess whether the government has presented the requisite foundation for this evidence at trial.  The Court will, however, deny the government's motion <u>in limine</u> seeking to preclude: (a) testimony by Crossland regarding Tillery's treatment of her and other women after Tillery became Crossland's supervisor in 2017; (b) lay opinion testimony by plaintiff and Crossland that Tillery's differential treatment of female subordinates was motivated by gender bias; and (c) evidence that Tillery denied plaintiff a similar promotion in 2010 under circumstances suggesting discrimination.  A separate Order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated:  <u>September 14, 2021</u>